UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:

PREFERRED CAPITAL FUNDING OF )
NEVADA, LLC, )
)
)
)
)
        Plaintiffs, )
) Case No.:
v. )
) **JURY DEMAND**
PHILLIP TIMOTHY HOWARD, )
JEFF KAHN, ) Damages: $5,843,354.20 plus punitive
HOWARD & ASSOCIATES, P.A. )
)
        Defendant. )

## COMPLAINT

Plaintiffs, Preferred Capital Funding of Nevada, LLC, ("PCF") by and through their attorneys, Grogan, Hesse & Uditsky, P.C., hereby complains of Defendants, Phillip Timothy Howard, Jeff Kahn, and Howard & Associates, P.A., as follows:

## PARTIES

1. Plaintiff, PREFERRED CAPITAL FUNDING OF NEVADA, LLC ("PCF"), is a limited liability company registered in the state of Nevada. PCF is a wholly owned subsidiary of PREFERRED CAPITAL FUNDING OF ILLINOIS, LLC, a limited liability company, with its principal office located in Chicago, Illinois.

2. Defendant, PHILLIP TIMOTHY HOWARD ("Howard") is an individual and licensed attorney who resides in the state of Florida and was admitted to the Florida Bar in 1987.

1

3. Defendant, HOWARD AND ASSOCIATES ("the Firm") is a Florida professional corporation located at 1415 Piedmont Drive, Suite 5, Tallahassee, Florida, 32308.

4. Defendant, JEFF KAHN, is an individual residing in the state of New York, who is being pursued both in his individual capacity and as an agent of Howard and Associates.

## BASIS FOR JURISDCITION

5. The amount in controversy exceeds seventy-five thousand dollars ($75,000.)

6. Preferred Capital Funding of Nevada, LLC, is a limited liability company, owned by Preferred Capital Funding of Illinois, LLC ("PCFI") with its principal place of business located at 358 W. Ontario, Suite 1W, Chicago, IL 60654. The Members of PCFI are all domiciled and citizens of the state of Illinois.

7. Defendant, Howard, is an individual domiciled in and a citizen of the State of Florida.

8. Defendant, Howard and Associates, is a Florida professional corporation and a citizen of Florida.

9. Defendant, Kahn, is an individual domiciled in and a citizen of the State of New York.

## FACTS

10. PCF is in the business of providing loans to individuals to assist them while they have pending litigation. These loans are provided with the knowledge of the attorney handling the litigation and based on information received from the Firm and/or an agent of the Firm describing the strength of the case.

2

11. PCF determines whether to make individual loans by assessing the strength of the claims in order to determine if the individual will be able to repay the loan terms.

12. From 1995 through present, Howard has been an attorney and Director of the Firm.

13. Howard and the Firm represented former National Football League ("NFL") players in their claims against the NFL for brain injury.

14. Howard and the Firm hold themselves out to be experts in the field of NFL concussion related litigation.

15. In case number 14CV0029 brought in the United States District Court, Eastern District of Pennsylvania, the NFL settled a class action lawsuit (the "Settlement") which permitted all former players of the NFL to register and be assessed according to a standardized protocol.

16. Players who chose to register and seek compensation must comply with the requirements of the Settlement, which delineated according to the date of diagnosis who were permissible diagnosing doctors, the diagnostic criteria, who reviewed the claims and the standard of review. *See* Attached **Exhibit 1**, Table of Diagnosis and Review Requirements.

17. Players who did not have a diagnosis prior to January 7, 2017 must obtain a diagnosis by a previously approved NFL provider defined as a Baseline Assessment Provider ("BAP") provider or a Monetary Award Fund ("MAF") physician (board certified neurologist, board-certified neurosurgeon, or board certified neuro-specialist who is a part of an approved list of providers).

18. Players who had a diagnosis prior to January of 2017 had to have a diagnosis from a selected group of specialists. *See* **Exhibit 1**.

19. Monetary Awards pursuant to the Settlement were delineated in a Grid, allowing recovery for determinations of illness defined as Level 1.5 (early dementia), Level 2 (moderate dementia), Alzheimer's, Parkinson's, Death with CTE, and/or ALS. *See* **Exhibit 2,** NFL Concussion Settlement Grid (the "Grid").

20. A Level 1 diagnosis was insufficient for recovery but allowed for a "wait and see approach" as the Settlement spans 65 years from the Settlement date.

21. Both Level 1.5 and Level 2 diagnoses allowed for recovery which was determined according to the age of qualifying diagnosis, length of time playing in the NFL and various other factors.

22. A part of the standardized protocol is for players to undergo testing by Settlement approved physicians.

23. Howard entered into contracts to handle the cases of the following individuals: Darryl Ashmore, Ulish Booker, Robert Brooks, Dexter Carter, Charlie Clemons, Conronta Cody, Shockmain Davis, Jamar Enzor, Elliott Fortune, Patrick Franklin, Corey Fuller, Elbre Gaiter, Myron Guyton, Nicholas Harris, Joseph Horn, Sedrick Irvin, Alonzo Jackson, Eric Joyce, Kevin Lewis, Kenneth McEntyre, Clarence Moore, Jamie Nails, Roman Phifer, Tommy Polley, Nathan Poole, Tyrone Rogers, Jesse Small, Robert Thomas, John Washington, Larry Webster, Jr., Floyd Young ("NFL Clients").

24. Howard, both individually and through a broker, Jeff Kahn, communicated with Plaintiff setting forth the need for the NFL Clients to obtain loans during the pendency of the NFL concussion lawsuit.

25. Howard and Kahn indicated to PCF that all of the NFL Clients brought to Plaintiff for loans qualified for recovery in the NFL settlement obtained in Federal District Court.

4

26. Howard and the Firm presented to the Plaintiff medical evaluations of the NFL Clients which indicated that the Clients had suffered levels of traumatic brain injury (Levels 1.5 or 2) that would substantiate a claim under the Settlement.

27. PCF relied on statements made by the Firm to PCF that the Firm was utilizing NFL Settlement approved physicians for the evaluation of the NFL Clients.

28. Howard and the Firm began predominantly using one physician, Dr. J. Lucas Koberda ("Dr. Koberda"), for evaluations of the NFL players.

29. Brian Garelli ("Garelli"), President of PCF and Jody Pravecek ("Pravecek"), Associate General Counsel for PCF, took part in a conference call with Howard and Kahn in which concerns about Dr. Korberda were raised.

30. During such conference call, Howard assured Garelli and Pravecek that the NFL Clients settlement awards were assured because Dr. Koberda was qualified pursuant to NFL Settlement guidelines.

31. Howard and the Firm stated that Dr. Koberda's testing of the NFL Clients was in compliance with NFL Concussion Testing protocols.

32. In reliance on the documents provided by Howard, the Firm, Koberda and Kahn, PCF issued loans to all 31 of the NFL Clients.

33. Upon information and belief, Dr. Koberda approved diagnosis of Levels 1.5 or Level 2 for all clients referred to him through Howard and the Firm.

34. Upon information and belief, many of the NFL Clients who obtained loans from Plaintiff, were instructed by Defendants to place that money with Capital Group Advisors, LLC aka Cambridge Capital Advisors, LLC ("Cambridge Group") an investment adviser firm to

which Howard was President, owner, and director from at least March 2015 through at least March 2017.

36. Cambridge Group created two private investment funds which Cambridge Group was the general partner and investment manager: the Cambridge Capital Partners LP (Cambridge Partner") and Cambridge Capital Group Equity Option Opportunities LP ("Cambridge Opportunities").

36. In summary, Howard solicited funds from players to be placed in the Funds and were told that the focus of the funds was "on individual equity and broad market index opportunities…with a secondary focus on short term private options on litigation settlement claims and short term lending opportunities."

37. Instead, the Funds were used almost exclusively to provide settlement advances to a host of NFL players being solicited to join in the NFL Settlement lawsuit, disregarding the risks that failure to achieve a sufficient judgment would result in losses to investors.

38. Moreover, the Funds were used to pay fees to Howard and to fund Howard's personal mortgage loans. Those misappropriated funds were never replaced by Howard.

39. A complaint has been filed against Howard by the Securities and Exchange Commission in the United State District Court, Northern District of Florida under case number 19CV00420 alleging Securities Fraud and various violations of the Securities Act, Exchange Act, and the Advisers Act.

40. Kahn was employed by or affiliated with Cambridge Group.

41. Some NFL Clients funds were directly dispersed to Cambridge Capital, an account related to Cambridge Group.

42.     Upon information and belief, Howard violated his fiduciary duties to his clients by recommending their investment in a group which financially benefitted him.

43.     Upon information and belief, Howard and the Firm transferred many of their clients to Amir Shenaq, an attorney licensed to practice in the State of Georgia with a law practice located in the state of Texas.

44.     Amir Shenaq is a solo practitioner working under the title Shenaq, PC, holding himself out to be a specialist in NFL football settlement cases.

45.     PCF was never provided any information about the cause of such transfer.

46.     On or about March 2019, the Plaintiff learned that many of the claims of NFL clients have not been approved pursuant to medical guidelines approved in the NFL Settlement.

47.     A majority of the NFL Clients, as many as twenty-six out of thirty-one, referred to PCF were not approved pursuant to Settlement guidelines (either tested "Did not Impair" or "Testing Invalid") after having taken a loan from PCF.

48.     Per the report of Shenaq PC, several of the NFL Clients cases still pending are awaiting results, and only a handful of clients have met settlement standards.

## COUNT I – FRAUD

49.     Plaintiff restates and realleges the allegations contained in Paragraphs 1 through 48 above, as if fully set forth herein.

50.     Howard, Kahn, and the Firm made false statements to Plaintiffs regarding the medical diagnosis of the NFL Clients.

51.     Howard, Kahn, and the Firm knowingly referred NFL Clients to PCF knowing that their diagnoses were not valid.

52. Howard, Kahn, and the Firm represented that that the physicians used in evaluating the NFL Clients were NFL Settlement approved.

53. Howard, Kahn, and the Firm utilized the same physician to make false diagnosis' in an attempt to procure money from PCF for the NFL clients and obtain the NFL Client's monies to be invested in Cambridge Group.

54. Howard, the Firm and Kahn fraudulently concealed the true status of the NFL clients' cases when they had a duty to disclose that information to Plaintiffs.

55. Howard, the Firm, and Kahn knew the statements they made to Plaintiff regarding the NFL Clients' diagnosis were false.

56. Howard, the Firm, and Kahn intended that Plaintiff rely on their false statements and omissions to induce PCF to act by issuing more loans to subsequent NFL Clients.

57. But for Howard, Kahn, and the Firm's false statements regarding NFL Client diagnoses, PCF would not have issued loans to additional NFL Clients.

58. PCF relied on Howard's false statements and omissions.

59. Howard, the Firm, and Kahn's fraudulent conduct damaged Plaintiffs in an amount that currently totals $5,843,354.20 as of on or about July 16, 2019.

60. Howard, Kahn, and the Firm's conduct was willful in nature and done so with malice aforethought. Therefore, punitive damages are warranted so that Howard, the Firm, and others in similar situations are discouraged from perpetrating other similar acts of fraud in the future.

WHEREFORE, Plaintiff, Preferred Capital Funding of Nevada, LLC, prays for a judgment in its favor and against Defendant, Timothy Howard, Jeff Kahn, and Howard and

8

Associates, P.C., in such amount as may be proved at trial, but in no event less than $5,843,354.20 plus punitive damages, along with costs, attorneys' fees and any and all such further relief as the Court sees fit.

Respectfully submitted,

**PREFERRED CAPITAL FUNDING OF NEVADA, LLC**

By: /s/ Katherine Schoon
One of its attorneys

Amy Galvin Grogan (ARDC#6229364)
Katherine Cannon Schoon (ARDC#6294666)
GROGAN, HESSE & UDITSKY, P.C.
340 W. Butterfield, 2A
Elmhurst, IL 60126
(630) 833-5533