IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PREFERRED CAPITAL FUNDING OF NEVADA, LLC,<br><br>   *Plaintiff*,<br><br>   v.<br><br>PHILLIP TIMOTHY HOWARD, JEFF KAHN, and HOWARD & ASSOCIATES, P.A.,<br><br>   *Defendants*. | No. 19 C 6245<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Preferred Capital Funding of Nevada, LLC ("Preferred Capital") sued Defendants Phillip Timothy Howard, Jeff Kahn, and Howard & Associates, P.A. (the "Firm") for fraud. Preferred Capital provides funding to litigation plaintiffs. Howard is a lawyer, and he and his Firm represent former NFL players bringing claims against the NFL for brain injuries sustained during their time in the league. Preferred Capital alleges that Defendants made false statements to Preferred Capital about the NFL players' medical diagnoses to induce Preferred Capital to make loans to the players. Preferred Capital also alleges that Howard then directed the players to invest the loans into an investment fund run by Howard, which Howard used to pay his personal mortgage and to provide settlement advances to other NFL players.

  Howard, an attorney representing himself and his Firm, now moves to dismiss the complaint. He cites a number of Federal Rules of Civil Procedure and purports to seek dismissal on a variety of grounds, but his arguments are either perfunctory and undeveloped, or rambling and irrelevant. The motion to dismiss [Dkt. 8] is denied. Howard also seeks Rule 11 sanctions

1

against Preferred Capital for filing a frivolous complaint. The motion for sanctions [Dkt. 20] is denied.

## STATEMENT OF FACTS

The following factual allegations are drawn from Preferred Capital's complaint (Dkt. 1) and are accepted as true for purposes of this motion to dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Preferred Capital provides loans to individuals to help them pay for pending litigation. (Dkt. 1 ¶ 10.) The loans are made with the knowledge of the attorney handling the litigation, based on the attorney's assessment of the strength of the case. (*Id.*) Preferred Capital decides whether to make individual loans by assessing the strength of a person's claims and their ability to repay the loan terms. (*Id.* ¶ 11.)

Since 1995, Howard has been an attorney and the director of Florida-based Howard & Associates, P.A. (the "Firm"). (*Id.* ¶ 12.) Howard and the Firm represent former National Football League ("NFL") players in claims against the league for brain injury. (*Id.* ¶ 13.) The NFL settled a class action lawsuit in the United States District Court for the Eastern District of Pennsylvania (the "Settlement"). (*Id.* ¶ 15.) As part of the Settlement, all former NFL players are permitted to register and be assessed for brain injury according to a standardized protocol. (*Id.*) Players who choose to register and seek compensation must comply with the terms of the Settlement, which include a list of permissible diagnosing doctors and specific diagnostic criteria. (*Id.* ¶ 16.) In other words, in order to recover under the Settlement, players must undergo particular testing by Settlement-approved physicians. (*Id.* ¶ 22.) Monetary awards under the Settlement are determined by the severity and timing of diagnosis. (*Id.* ¶ 19, 21.) The Settlement provides recovery for diagnoses defined as "Level 1.5" (early dementia), "Level 2" (moderate dementia), Alzheimer's

disease, Parkinson's disease, ALS, or Death with CTE. (*Id.*) A "Level 1" diagnosis is insufficient for recovery but allows for a "wait and see" approach, because the Settlement spans 65 years from the settlement date. (*Id.* ¶ 20.)

Howard entered into contracts to handle the cases of 31 current or former NFL players. (*Id.* ¶ 23.) Howard told Preferred Capital (both directly and through a broker, Jeff Kahn) that the players needed loans while the NFL concussion lawsuit was pending. (*Id.* ¶ 24.) Howard and Kahn told Preferred Capital that all the players they were referring to Preferred Capital to receive loans were qualified to receive a recovery from the NFL under the Settlement. (*Id.* ¶ 25.) Howard and the Firm specifically told Preferred Capital that medical evaluations of the 31 players indicated they all suffered levels of traumatic brain injury (Levels 1.5 or 2) that would substantiate claims under the Settlement. (*Id.* ¶ 26.) The Firm also told Preferred Capital that it was using Settlement-approved physicians to evaluate the players. (*Id.* ¶ 27.) Howard and the Firm primarily used one physician, Dr. J. Lucas Koberda, to evaluate the players. (*Id.* ¶ 28.) During a conference call, Preferred Capital personnel raised concerns about Dr. Koberda to Howard and Kahn. (*Id.* ¶ 29.) Howard assured Preferred Capital that Dr. Koberda was qualified to assess and diagnose players under the Settlement guidelines and that his testing methods complied with the Settlement's testing protocols. (*Id.* ¶¶ 30-31.)

Preferred Capital issued loans to all 31 players based on documents provided by Howard, the Firm, Kahn, and Dr. Koberda. (*Id.* ¶ 32.) Dr. Koberda approved Level 1.5 or Level 2 diagnoses for all players referred to him by Howard and the Firm. (*Id.* ¶ 33.) Many players who received loans from Preferred Capital were instructed by Defendants to place the loan money with Capital Group Advisors, LLC, also known as Cambridge Capital Advisors, LLC ("Cambridge Group"), an investment adviser firm that Howard was the President, owner, and director of from March

3

2015 through March 2017. (*Id.* ¶ 34.) Howard told the players that their loan money was being placed in investment funds focused on "individual equity and broad market index opportunities . . . with a secondary focus on short term private options on litigation settlement claims and short term lending opportunities." (*Id.* ¶ 36.) Instead, the funds were used to provide settlement advances to NFL players being solicited to join in the Settlement lawsuit, to pay Howard's fees, and to fund Howard's personal mortgage loans. (*Id.* ¶¶ 37-38.) Kahn was employed by or affiliated with Cambridge Group. (*Id.* ¶ 40.)

Howard and the Firm transferred many of the NFL players' cases to Amir Shenaq, a Texas-based solo practitioner who also specializes in NFL settlements. (*Id.* ¶¶ 43-44.) Preferred Capital was never notified of the transfer. (*Id.* ¶ 45.) In March 2019, Preferred Capital learned that many of the players' claims (as many as 26 out of the 31) were not approved under the medical guidelines in the Settlement because the players received test results of "Did not Impair" or "Testing Invalid." (*Id.* ¶¶ 46-47.) Several of the players are still waiting for test results, and only a handful of players have met Settlement standards for recovery. (*Id.* ¶ 48.)

Preferred Capital alleges that Howard, Kahn, and the Firm referred players to Preferred Capital to receive loans even though they knew the players' diagnoses were invalid. (*Id.* ¶ 51.) It further alleges that Howard, Kahn, and the Firm used the same physician to make false diagnoses in order to procure money from Preferred Capital, which they then funneled into Cambridge Group. (*Id.* ¶ 53.) Preferred Capital alleges it relied on Defendants' statements and would not have made loans to the NFL players if Defendants had not made those statements. (*Id.* ¶¶ 57-58.) Preferred Capital alleges it suffered $5,843,354.20 in damages as a result of Defendants' conduct. (*Id.* ¶ 59.)

4

**DISCUSSION**

Defendants Phillip Howard and the Firm now move to dismiss the complaint, to strike the complaint, move for a more definite statement, and move for sanctions. Defendants' motions are denied in their entirety.

**A.      Subject-Matter Jurisdiction**

Defendants first move to dismiss for lack of subject-matter jurisdiction. According to Defendants, the Court lacks subject-matter jurisdiction over the case because: a) there is no contract or agreement between the parties; b) Defendants have not provided any "independent medical information" to Preferred Capital; and c) Preferred Capital is not a lending institution, a physician, a Settlement-approved physician, or a "risk and lending advisor[] to lending institutions." (Dkt. 8 at 1-2.) Despite making these various assertions, Defendants do not actually argue how any of this impacts the Court's subject-matter jurisdiction—perhaps because it is all irrelevant. As the Complaint makes clear, the Court has subject-matter jurisdiction based on 28 U.S.C. § 1332, which requires complete diversity between the parties and more than $75,000 at issue. Both requirements are met here. Preferred Capital is an Illinois citizen, Howard is a Florida citizen, the Firm is a Florida citizen, and Kahn is a New York citizen; and Preferred Capital claims $5.8 million in damages. (Dkt. 1 ¶¶ 5-9, 59.) Defendants do not dispute any of those allegations, and none of Defendants' assertions are relevant to the Court's subject-matter jurisdiction over this case.

**B.      Personal Jurisdiction**

Defendants next move to dismiss the Firm for lack of personal jurisdiction because "Howard & Associates, P.A. does not exist as a law firm, has never existed, and is not a proper party." (Dkt. 8 at 2.) A federal district court exercising diversity jurisdiction has personal

5

jurisdiction over a nonresident only if a court of the state in which it sits (in this case, Illinois) would have such jurisdiction. *See, e.g.*, *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). "Illinois law permits its courts to exercise jurisdiction over a person 'as to any cause of action arising from . . . (1) [t]he transaction of any business within [Illinois]." *Id.* (quoting 735 Ill. Comp. Stat. 5/2-209(a)(1)).

The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it, to the extent Defendants' single-sentence argument (devoid of any analysis or citations) can be considered a jurisdictional challenge. *See N. Grain*, 743 F.3d at 491. Here, Preferred Capital argues that this is not an issue of personal jurisdiction at all and is instead the result of "scrivener's error" or misnomer. Preferred Capital argues that it simply sued the Firm under the wrong name ("Howard & Associates, P.A.") and should be allowed to amend its complaint under Illinois's "misnomer" doctrine to include the Firm's correct name ("Howard & Associates, Attorneys at Law, P.A.").

"In Illinois, 'misnomer of a party is not a ground for dismissal but the name of the party may be corrected at any time.'" *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 234 (7th Cir. 1996) (quoting 735 ILCS 5/2–401(b)). That said, "this rule is a 'narrow one' and Illinois courts have 'consistently distinguished the misnomer rule from rules applicable to a mistake in identity.'" *Id.* (quoting *Barbour v. Fred Berglund & Sons, Inc.*, 567 N.E. 2d. 509, 512 (Ill. App. Ct. 1990)). "A misnomer occurs where the plaintiff brings an action and serves summons upon the party *intended* to be made the defendant, thus giving actual notice of the lawsuit to the real party in interest, but the process and complaint do not refer to the person by his correct name. Mistaken identity, on the other hand, occurs when the wrong person is named and served." *Id.* (quoting *Shaifer v. Folino*, 650 N.E. 2d 594, 597 (Ill. App. Ct. 1995)). Misnomer is precisely what has occurred here.

6

The Complaint makes clear that Preferred Capital intended to sue defendant Howard's law firm. It served a summons on an entity named "Howard & Associates, P.A." via "Phillip Timothy Howard, Senior Partner." *See* Dkt. 6. Defendants do not argue that the wrong Phillip Timothy Howard was served, nor do they argue that Howard's law firm was not the intended defendant or the real party in interest. They also do not argue that Howard's law firm did not receive notice of the suit. Because the Court finds that this was an instance of misnomer, personal jurisdiction is not at issue here. "The effect of misnomer is that the court acquires personal jurisdiction over the party who is called by an incorrect name but receives notice of the lawsuit." *U.S. Bank Nat. Ass'n v. Johnston*, 55 N.E. 3d 742, 751-52 (Ill. App. Ct. 2016). Preferred Capital is granted leave to amend its complaint naming the correct law firm entity and must do so within seven days of the entry of this order.

**C.     Venue**

Defendants next argue, again in a single sentence, that venue is improper because "Defendants are residents of Florida and New Jersey, and Plaintiff is a Nevada Company," so "[p]roper venue is not in Illinois." (Dkt. 8 at 2.)

Like personal jurisdiction, the burden of establishing proper venue falls to the plaintiff once it has been challenged by a defendant. *See, e.g.*, *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 915-16 (N.D. Ill. 2010) (citing cases). Defendants do not actually articulate a ground for challenging venue here. By listing the parties' states of residence or citizenship, Defendants seem to be arguing that venue is only proper in a judicial district where one of the parties resides. Of course, that is not the case. "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. Preferred Capital alleges that it is owned by an Illinois limited liability company whose members

7

are all Illinois citizens and which has its principal place of business in Chicago, Illinois, within this district. Preferred Capital also argues in response to Defendants' motion that the loans at issue in the case were underwritten in this district. (Dkt. 11 at 4.) Defendants have demonstrated that venue is proper here.

### D.   Failure to State a Claim

Defendants' motion fundamentally misunderstands the purpose of a motion to dismiss for failure to state a claim. Though Defendants' argument never cites a Federal Rule of Civil Procedure, they are presumably moving under Rule 12(b)(6), because the argument section is titled "Failure to State a Claim Upon Which Relief Can Be Granted." (Dkt. 8 at 2-4.) When evaluating a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's well-pleaded allegations as true. *W. Bend*, 844 F.3d at 675. "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case." *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 757 (N.D. Ill. 2015) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir.2012)); *see also, e.g.*, *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 730 (N.D. Ill. 2018) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.") (quoting *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)). Defendants' entire argument on this front consists of disputing, denying, contradicting, or attempting to disprove Preferred Capital's allegations with additional "facts", which is improper at the motion to dismiss stage. Defendants' various "supplements" to their initial motion to dismiss (Dkt. 15, 18, 23, 24, 26) are simply more of the same. Defendants will have an opportunity, either through a summary judgment motion or at trial, to contest the veracity of Preferred Capital's claims and present their side of the story. But a motion to dismiss for failure to state a claim is not the vehicle to do that. Preferred Capital brings a single fraud claim, and

8

Defendants do not even attempt to address any sort of pleading deficiency, identify an essential element of a fraud claim that Preferred Capital failed to plead, or support their argument with any relevant case law, so any argument regarding the legal sufficiency of Preferred Capital's complaint is waived. *See, e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *E.E.O.C. v. DHL Exp. (USA), Inc.*, No. 10 C 6139, 2011 WL 1326941, at *9 (N.D. Ill. July 7, 2011) (where plaintiffs "fail to develop [] argument in any meaningful way and do not support [] argument with controlling legal authority," the argument is waived).

**E.     Failure to Join an Indispensable Party**

Defendants next argue that the action must be dismissed because Preferred Capital failed to join indispensable parties—Dr. J. Lucas Koberda, the physician who diagnosed brain injuries in Defendants' NFL player clients, and an unnamed "NFL Concussion Claims Administrator." (Dkt. 8 at 4.) The party moving to dismiss an action for failure to join an indispensable party "has the burden of showing that the absent party is both 'necessary' under Rule 19(a) and 'indispensable' under Rule 19(b)." *See PCH Lab Servs., LLC v. Newman Mem'l Hosp. Inc.*, No. 17 C 7971, 2018 WL 1378181, at *3 (N.D. Ill. March 16, 2018). Defendants have not met either burden here. Defendants' one-paragraph argument does not identify Rule 19 or cite a single case or any other legal authority. Defendants do not even attempt to argue either the necessity or indispensability of either Dr. Koberda or the unnamed claims administrator. Instead, Defendants once again try to refute Preferred Capital's allegations (arguing, for example, "if there is no misrepresentation in [Dr. Koberda's] reports, then Plaintiff does not have a valid action") (Dkt. 8 at 4) but the Court accepts the complaint's allegations as true when reviewing a motion to dismiss for failure to join an indispensable party. *See Davis Cos. v. Emerald Casino, Inc.*, 286 F.3d 477,

9

479 n.2 (7th Cir. 2001). Defendants failed to meaningfully develop this argument or cite any supporting legal authority, so it is also waived. *See, e.g.*, *Crespo*, 824 F.3d at 674.

### F.     Motion for a More Definite Statement

Defendants additionally move under Rule 12(e) for a more definite statement. Rule 12(e) motions are appropriate only when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Rose v. Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212, 1224 (N.D. Ill. 2018). Defendants ignore the purpose of Rule 12(e) and do not address any vagueness or ambiguity in the complaint. Instead, Defendants continue to argue that Preferred Capital's allegations are "demonstrably false" and "logical[ly] impossib[le]," and use this motion as yet another attempt to add facts to the record or otherwise dispute Preferred Capital's allegations. (*See* Dkt. 8 at 5-7.) Defendants' own motion and various responses and supplemental filings indicate that Defendants are, in fact, acutely aware of what alleged conduct is at issue in the complaint. *See, e.g.*, *Hallom v. City of Chi.*, No. 18 C 4856, 2019 WL 1762912, at *2 (N.D. Ill. Apr. 22, 2019) (denying motion for more definite statement where "Defendants' motion and reply brief indicate that it is sufficiently aware of what alleged conduct is at issue"). Preferred Capital's complaint is sufficient to put Defendants on notice of the claims against them and Defendants' motion for a more definite statement is denied. *See id.* ("If the pleading meets the requirements of Rule 8 . . . and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement should not be granted.")

### G.     Motion to Strike

Defendants also move under Rule 12(f) to strike all of Preferred Capital's claims because they are "false," "logically impossible," and because Defendants have submitted evidence to disprove them. (Dkt. 8 at 7-8.) Rule 12(f) allows a district court to strike material from a pleading

10

if it is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Contrary to Defendants' argument, simply disputing or denying an allegation is not a sufficient ground to strike it. "A motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or fact, especially where, as here, there has been no discovery, and the factual issues on which the motion to strike largely depends are disputed." *Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011). "A motion to strike should not be granted unless [] the language in the pleading has no possible relation to the controversy and is clearly prejudicial; this is essentially a relevance inquiry." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013) (citations and quotations omitted). Though Defendants do not specify which specific allegations or material should be stricken, they seem to take particular issue with Preferred Capital's allegations about Dr. Koberda's qualifications and the validity of his diagnoses. Those allegations are at the heart of the controversy and there is no question that they are relevant to Preferred Capital's claims. Defendants' motion to strike is denied.

**H.     Motion for Sanctions**

Finally, Defendants separately move under Rules 11(b) and (c) to sanction Preferred Capital. Defendants argue (in one sentence) that their motion to dismiss and various supplemental filings demonstrate that "there is no factual or legal basis for the Complaint." Rather than identify specific allegations or claims in the Complaint that violate Rule 11, Defendants simply allege additional facts and otherwise deny the Complaint's allegations, without actually identifying which allegations they are responding to. (*See* Dkt. 20 at 1-2.) The Court denies Defendants' motion for sanctions because it is improperly raised. *See* Fed. R. Civ. P. 11(c)(2) ("[a] motion for sanctions must be made separately from any other motion and *must describe the specific conduct*

11

*that allegedly violates Rule 11(b)*") (emphasis added). Defendants make no effort to describe the specific allegedly violative conduct, as the Rule requires.

## CONCLUSION

Defendants' motion to dismiss, motion to strike, and motion for a more definite statement [Dkt. 8] is denied. Defendants filed a second, identical motion to dismiss [Dkt. 9] which is stricken as duplicative. Long after the briefing schedule concluded, Defendants filed a third motion (without seeking the Court's leave) styled as a "Motion to Dismiss; Motion for a More Definite Statement; Motion to Strike; and Motion for Sanctions" [Dkt. 26]. Like Defendants' previous filings, it does not raise any legitimate, independent grounds for dismissal or sanctions and instead purports to dispute Preferred Capital's allegations and add material that is extraneous and irrelevant at this phase, so that motion [Dkt. 26] is also denied. Even if that were not the case, the motion would be stricken because Defendants already filed two previous motions to dismiss and cannot continue filing repeat motions or seeking to amend or supplement previous motions without the Court's permission. Finally, Defendants' motion for sanctions [Dkt. 20] is denied.

Preferred Capital is granted leave to file an amended complaint correcting its previous misnomer and naming the correct defendant by January 16, 2020. Defendants must answer the amended complaint by January 30, 2020.

_____
Virginia M. Kendall
United States District Judge

Date: January 10, 2020