UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

PREFERRED CAPITAL FUNDING,
NEVADA, LLC,

    Plaintiff,

v.

JEFF KAHN, PHILLIP TIMOTHY HOWARD and
HOWARD & ASSOCIATES, P.A.,

    Defendants.

Case No. 1:19-cv-06245
District Court Judge Virgina M. Kendall

---

# ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

Pursuant to Rules 8, 12 and 13 of the Federal Rules of Civil Procedure, Defendants Phillip Timothy Howard and Howard & Associates, P.A., ("Defendants"), by and through counsel, hereby serves its Answer, Affirmative Defenses, and Counterclaims to First Amended Complaint filed by Plaintiff, Preferred Capital Funding, Nevada, LLC, as follows:

Paragraphs 1-4. Admit.

Paragraphs 5-9. Admit.

Paragraph 10. Admit that PCF is in the business of providing loans to individuals to assist them while they have pending litigation. Deny that communications with the attorney is the basis for making such loans. Admit that PCF receives documents from any firm and/or an agent to make any and all loan

decisions.

Paragraphs 11-13. Admit.

Paragraph 14. Deny that Howard and firm are medical experts and create or provide the medical diagnoses of anything for anyone, including medical opinions on the injuries to retired NFL Concussion injury plaintiffs. Admit that Howard and firm represent retired NFL Concussion injury plaintiffs and are successful in generating awards for their clients, including those that borrowed from PCF.

Paragraph 15. Admit that in case number 14 CV0029 in the United States District Court, Eastern District of Pennsylvania, the NFL settled a class action lawsuit ("NFL Concussion Settlement") which permit all former players of the NFL to register and seek payment for their injuries. Deny that the protocols are completely standardized or stable, and aver that the medical-legal disputes by the litigating parties and audits and rulings by the claims administrator and the District Court Judge in resolving those audits and medical-legal disputes have significant impact on settlement claim determination standards and can change and/or delay claims processing for a year or more, which took place in this case.

Paragraph 16. Admit that Players must register and seek compensation and comply with the requirements of the NFL Concussion Settlement. Deny that the criteria are stable and cannot change.

Paragraph 17. Admit.

Paragraph 18. Admit that the Exhibit 1 lists the medical certifications required of medical specialists. Deny that any specialists are listed.

Paragraph 19. Admit that this is the grid used by the NFL Concussion Settlement. Deny that protocols for diagnosis are completely standardized or stable.

Paragraph 20-22. Admit.

Paragraph 23. Admit that the listed players entered into representation agreements. Deny that Defendants represents each of the listed players. Aver that Plaintiff has not listed player that Defendants do current represent and has loans from PCF.

Paragraph 24. Deny that Defendants wanted or encouraged clients to make loans on their claims. Admit that out of 324 clients a small percentage sought and received loans from PCF. Admit that Jeff Kahn was a broker for some client loans.

Paragraph 25-28. Deny that Defendants had the medical credentials or expertise to render neurocognitive impairment ratings. Defendants aver that they relied upon the expert opinions of their experts for such diagnoses. Admit that Defendants forwarded medical records from Dr. Koberda to PCF and that Dr. Koberda was and is NFL Concussion Settlement MAF qualified.

Paragraph 29-31. Deny that there is any dispute that Dr. Koberda was and is NFL Concussion settlement MAF qualified. Deny that any such conference call,

if it took place, is determinative of acceptance of Dr. Koberda's reports, even if he is NFL Concussion Settlement MAF qualified, as a final diagnosis by the NFL Concussion Settlement claims process and is anything that can be relied upon for a final determination. Deny that the NFL Concussion Settlement protocols are completely standardized or stable. Aver that the NFL Concussion Settlement medical-legal disputes by the litigating parties and audits and rulings by the claims administrator and the District Court Judge in resolving those audits and medical-legal disputes have significant impact on settlement claim determinations, and can change claim determination standards and delay claims processing for a year or more, which took place in this case.

Paragraph 32. Deny that Plaintiff had any basis to think that Defendants were physicians or medical experts and can assert that they are physicians or medical experts that they could rely on. Deny that Defendants had any more expertise than Plaintiff in evaluating or processing NFL Concussion Settlement claims, since at that time no claims had been processed to even know how the protocols were going to be interpreted by the NFL Concussion Settlement claims administrator or how the medical-legal disputes as to the application of the settlement terms were going to be resolved and interpreted by the United States District Court Judge.

Paragraph 33. Deny that Dr. Koberda approved diagnosis of Levels 1.5 or

4

Level 2 for all clients referred to him through Defendants.

Paragraph 34. Deny that Defendants were instructed or encouraged to place money into any account, even for one which Howard was a titular head and not managing or operating, such as the Cambridge Group, and has net investments of over $1.35 million into the fund.

Paragraph 35. Admit that investment funds were created.

Paragraph 36. Deny solicitation or communications as to the focus of any fund.

Paragraph 37. Deny that was the intent or goal of the fund. Deny that the risk is significant in that 99% of all retired NFL players have been found to have CTE, and Plaintiff has been paid on approximately 16 of the loans listed in the Amended Complaint.

Paragraph 38. Deny that Howard received any fees and deny that any loan is outstanding to any Cambridge Group. Aver that Howard has net investments of over $1.35 million into the Cambridge Group.

Paragraph 39. Admit unverified complaint has been filed. Aver that complaint intentionally avoids the net of $1.35 million that Howard has invested, more than double of any other investor, that no fees were received, and that all loans were repaid with maximum interest to the fund.

Paragraph 40. Admit that after the operative dates of the PCF loans, that

5

Kahn developed an affiliation with Cambridge Group and that this took place after Howard left even titular participation with the Cambridge Group.

Paragraph 41. Neither admit nor deny. If this took place the records will speak for themselves.

Paragraph 42. Deny.

Paragraph 43. Deny that transferred any client. Admit that entered into a co-counsel relationship with Shenaq, PC, to jointly represent most clients.

Paragraph 45. Deny in that PCF seeks periodic updates on all of their loans and would have been informed of the status of the claims when updates were provided.

Paragraph 46. Neither admit nor deny as Defendants have no knowledge of this and the source or context of the allegation. Defendants aver that any information provided as of March of 2019 would not be relevant as all claims were stagnant due to systemic audits that were not lifted until Summer of 2019 and since the lifting of the audit claims are being processed and Plaintiff knows it has received and will receive significant payments and profits on its loans.

Paragraph 47. Deny. Plaintiff knows that a majority of the loans have been or are being paid.

Paragraph 48. *See* response to Paragraph 46.

Paragraph 49. *See* responses to Paragraphs 1 through 48.

6

Paragraph 50-51. Deny.

Paragraph 52. Deny as to physicians. Admit that Dr. Koberda was NFL Settlement approved.

Paragraph 53-60. Deny. *See* responses to Paragraphs 1 through 48.

## FACTS IN SUPPORT OF AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

1. The documents referenced herein are found in either Plaintiff's files or the files of the United States District Court's NFL Claims Administrator and are attached to the sealed Motion to Dismiss First Amended Complaint, as such they are appropriate to reference and cite as a bases for this Counterclaim.

2. The United States District Court for The Eastern District of Pennsylvania, NFL Concussion Settlement, Qualified MAF Physician List, document 543995, updated as of 12/2/19, lists J. Lucas Koberda, MD, in page 6. Attachment I, demonstrates that Dr. Koberda is indeed MAF qualified by the NFL Claims Administrator. A true and correct copy of this verification can be found at any time on the U.S.D.C. managed website (www.NFLConcussionSettlement.com), and is attached as Exhibit A. Dr. Koberda has been on this list since 2017.

3. Plaintiff filed this Amended Complaint in the face of nearly $14.5 million ($14,449,269.20) dollars in confirmed awards on the NFL claims at issue, and resulting profits made by Plaintiff, (not counting recoveries for former clients, such

7

as D_____ C____, who Defendants based on information and belief received another approximately $1.8 million).

4. In Attachment II to the Motion to Dismiss Amended Complaint, Defendants filed the following: (1) U.S. District Court managed NFL Concussion Settlement Official Notices of Monetary Award Claim Determinations, (2) related Closing Statements, and (3) Charging Liens, as needed, that Plaintiff in an extraordinary violation of reason, frivolously and impossibly, claims, as the only logical basis of and for its Complaint, are fraudulent, yet document nearly $14.5 million ($14,449,269.20) dollars in confirmed awards.

5. It is undisputable that these claims alone amount to a total recovery of $14,449,269.20, and even more has been awarded to clients no longer represented by Defendants, such as D____ C_____ who received approximately $1.8 million, which combined total a minimum of at least $16.2 million. It is undisputable that Plaintiff is being paid and making profits on these loans. To claim otherwise belies reason and reality and is knowingly fraudulent.

6. Preferred Capital Funding verified loans, loan payoffs, loans that are not listed in Plaintiff's Complaint, and loans for clients that are not represented by Defendants. These demonstrate that the on these 31 claimed loans, were based on Plaintiff's vetting, Plaintiff's review of the neuropsychological and medical records, and was a

8

transaction between the retired NFL Player and Plaintiff. Defendants were not a party.

7. Plaintiff sought to provide loans to retired NFL Players for their CTE claims. Defendants did not seek or propose these loans in any fashion. On April 8, 2016, Plaintiff wrote and sought referrals if any of Defendants' clients were seeking loans. Defendants did not seek these loans. *See* Attachment III, Exhibit A to Motion to Dismiss Amended Complaint.

8. Plaintiff sought and provided loans to some of Defendants' clients going back to April of 2016, and continued in their due diligence, underwriting, and loan risk analyses for various loans through October 27, 2017. Out of the over 320 clients represented by Defendants, and the numerous files Plaintiff reviewed and determined to make loans on, the status on loans made are as follows:

**16 of the Loans are Paid Off with Profits**;

**7 of the Loans are in Process of Being Paid Off**;

**7 of the Loans Listed in the Complaint are Not clients**; and

**4 of the Loans in Defendants' Files are Not in Complaint**.

9. Thus, 23 of the loans are either paid off or in the process of being paid off, with 7 of the loans listed as not being current clients of Defendants. In fact, Plaintiff has failed to include 4 loans that were not listed in the Complaint but went through the Plaintiff's same underwriting process. *See* Attachment III to the Motion to

9

Dismiss Amended Complaint, is a Chronological List of Plaintiff's documents from April 8, 2016 through March 28, 2017, a Chronological List of Plaintiff's Documents from April 3, 2017 through May 30, 2018, verifying the chart in footnote 2. Also note that these loan amounts do not amount to the claimed damages in the Amended Complaint.

10. These documents provided by the Plaintiff, documents: (1) The loan payoffs, (2) Immanent loan payoffs, (3) Validity of testing of clients, (3) Plaintiff loans for clients "not" listed in Complaint, and (4) Listing of loans for persons that are "not" clients. This undisputable evidence from Plaintiff, demonstrates the impossible nature of the Complaint. Plaintiff's Individual assessments and medical reviews were made over a 20-month period.

11. Thirty-one (31) Plaintiff loans were done before the NFL Concussion Claims Facility was opened on March 23, 2017. Dr. Koberda was approved as a NFL Claims qualified Monetary Assessment Fund (MAF) on or around June of 2017, and by that time an additional 14 loans were made.

12. There was never a conference call with Plaintiff and Defendants addressing *en masse* the 31 clients listed in the Complaint, as inferred by Plaintiff. A 20-month call would necessarily be a known impossibility.

13. It is undisputable that Defendants were correct and accurate as to Dr. Koberda being NFL Claims Administrator MAF qualified, and he is also BAP qualified. His

reports were the best reliable medical evidence that clients would meet NFL Concussion Settlement standards. In fact, as of June of 2017, Defendants spent approximately $3 million for such testing results on behalf of all of their clients and relied upon these results as much as Plaintiffs did.

14. Thirty-one (31) Plaintiff loans were done before the NFL Concussion Claims Facility was opened on March 23, 2017. At that point Defendants nor anyone in existence could have had any experience in processing NFL Concussion Settlement claims since none had ever been done in the history of man. Plaintiff knew this.

15. Dr. Koberda was approved as an NFL Claims qualified Monetary Assessment Fund (MAF) on or around June of 2017, and by that time an additional 14 loans were made.

16. Defendants complied with their role—providing medical records to Plaintiff as requested by their clients.

17. Plaintiff did their independent underwriting of the loans and had full and available access to the physicians and neuropsychologists as well as their records, in making their risk assessments.

18. Defendants were not physicians nor neuropsychologists. Moreover, the preliminary testing results by the physicians and neuropsychologists on the borrowers have been shown to be accurate, with profits being made and will continue to be made by Plaintiff.

19. The law is not to be used to take dissembled facts from another unproven lawsuit (that fails to recognize that there is a net of over $1.3M invested, no loans are outstanding, and no fees were made, in order to create a false specter for professional gain), and through legal legerdemain seek recovery for non-existent and fraudulent claims. Moreover, as testing results come in and claims are processed by the NFL Concussion Claims Administrator, additional $ millions in awards and additional profits will be made by Plaintiff.

20. In sum, Plaintiff's own documents and those of the United States District Court for the Eastern District of Pennsylvania irrefutably document that Defendants complied with their role—providing medical records to Plaintiff as requested by their clients. (1) Dr. Koberda was and is United States District Court, Eastern District of Pennsylvania, Claim Administrator NFL Claims MAF certified; (2) over $16.2 million in awards have already taken place for clients that took loans from Plaintiff; and (3) Plaintiff knows that no call took place over a 20 month period and no misrepresentations took place since the core of their case is that Dr. Koberda is not MAF certified and claims are not being paid. Both of which are demonstrably and knowingly fraudulent and false by documents in possession of Plaintiff and the Courts.

21. Plaintiff did their independent underwriting of the loans and had full and available access to the physicians and neuropsychologists as well as their records, in

making their risk assessments. In fact, Plaintiff met personally with each borrower in Nevada prior to making each loan based on its own underwriting and risk assessment of the borrower after interviewing, meeting with, and assessing the injuries of each borrower.

22. Plaintiff does not claim that Defendants were medical physicians performing diagnoses. Indeed, Defendants were not physicians nor neuropsychologists, nor did they claim to be.

23. Moreover, the preliminary testing results by the physicians and neuropsychologists on the borrowers at issue have been shown to be accurate, with many awards higher than expected (such as the $3.120 million for R.B, and the $1.976M for J.S.) and significant profits being made and will continue to be made by Plaintiff.[1]

## AFFIRMATIVE DEFENSES

24. Assumption of risk in making loans as Plaintiff is in the business of underwriting and loans and individually met with, interviewed, and assessed each borrower and made its own underwriting decisions.

---

[1] The latest rulings by the United States Circuit Court for the Second Circuit, United States District Court Judge Brody, and arbitration victories by Thrivest for full compensation consistent with the litigation advance agreements with retired NFL Concussion claimants has lenders being awarded interest rates as high as 40%, and these are the rates charged by Plaintiff as demonstrated in Attachment III to the Motion to Dismiss Amended Complaint.

13

25.     Estoppel in that Plaintiff's reliance on medical reports of medical experts, and meeting and interviews with borrowers, to make the loans, and none of which were prepared or attended by Defendants.

26.     Fraud in that it there is an obvious understanding by Plaintiff that Defendants are not medical experts.

27.     Fraud in that there is an obvious understanding by Plaintiff that no NFL Concussion Claim had been processed for any person to know how the claims would actually be processed when the loans were made.

28.     Accord and satisfaction in that Plaintiff is being paid and has been paid on its loans.

29.     Award made in that Plaintiff is being paid and has been paid on its loans.

30.     Estoppel in that Plaintiff is being paid and has been paid on its loans.

31.     Illegality in that Plaintiff knows it is being paid and has been paid on its loans.

32.     Payment made in that Plaintiff is being paid and has been paid on its loans.

33.     Injury by fellow servant in that Plaintiff relied on its own staff's review of medical records, meetings and interviews with borrowers, and its own staff's review of the NFL Concussion Settlement standards and protocols to make its own underwriting decisions, which decisions are paying profits to the Plaintiff.

34. Waiver in that Plaintiff can't both receive the repayment of its loans and profits, and also seek to sue for those same amounts, and by receiving the repayments of its loans and profits it waives any action against Defendants.

35. Release in that Plaintiff can't both receive the repayment of its loans and profits, and also seek to sue for those same amounts, and by receiving the repayments of its loans and profits it releases any action against Defendants.

36. Contributory negligence in that Plaintiff reviewed the same medical records that Defendants received and made its own risk analysis to make its loan decisions after interviewing and meeting with borrowers.

## **COUNTERCLAIMS**

## **COUNT I -- FRIVOLOUS VEXATIOUS ACTION**

37. Defendants restate and realleges the allegations and documentation contained in Paragraphs 1 through 36 above, as if fully set forth herein.

38. Plaintiff knows that this action has no merit yet fraudulently continues to pursue this vexatious action costing Defendants legal time and expense and harming Defendants' reputation.

39. Plaintiff is knowingly pursuing a frivolous action in violation of Rule 11, Federal Rules of Civil Procedure.

WHEREFORE Defendants hereby request damages of legal time and expense, and harm to reputation, as a result of and in responding to and defending against this frivolous vexatious action.

### COUNT II -- FRAUD

40. Defendants restate and realleges the allegations and documentation contained in Paragraphs 1 through 36 above, as if fully set forth herein.

41. Plaintiff knows that Dr. Koberda is NFL Concussion Settlement MAF certified, and that its loans are being paid.

42. Plaintiff knows that this action has no merit yet fraudulently continues to pursue this vexatious action costing Defendants legal time and expense and harming Defendants' reputation.

43. Plaintiff is fraudulently pursuing this action with verified and known false statements and omissions in its Amended Complaint.

44. Plaintiff is fraudulently claiming damages of $5,843,354.20 that it knows does not exist and has not been injured in this or any amount.

45. Plaintiff's conduct is willful in nature and done so with malice aforethought in the face of documents that demonstrates its fraudulent intent and purpose, therefore punitive damages are warranted so that Plaintiff and others in similar situations are discouraged from perpetrating other similar acts of fraud in the future.

WHEREFORE Defendants hereby prays for judgment in its favor and against Plaintiff in such amount as may be proved at trial, but in no event less than the hours spent by counsel in defending the action, the harm to reputation as found in media reports of this frivolous action, and any and all such further relief as the Court sees fit.

Respectfully submitted on this 7th Day of February 2020.

/s/ Tim Howard
TIMOTHY HOWARD, J.D., PH.D.
1415 East Piedmont Dr. Suite 5
Tallahassee, Florida 32308
Telephone: (850) 298-4455
Facsimile: (850) 216-2537
Tim@HowardJustice.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February 2020, a copy of the foregoing was served by email to the following counsel of record:

Katherine Schoon
Amy Galvin Grogan
Grogan, Hesse & Uditsky, P.C.
340 W. Butterfield Rd., Suite 2A
Elmhurst, IL 60126
kschoon@ghulaw.com
agrogan@ghulaw.com
(630) 833-5533 (o)

/s/ Tim Howard
Tim Howard, Esq.